IN THE SUPREME COURT OF MISSISSIPPI

NO. 2005-DR-00632-SCT

*QUINTEZ WREN HODGES*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/13/2001 |
| TRIAL JUDGE: | HON. JOHN M. MONTGOMERY |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEY FOR PETITIONER: | ROBERT B. MCDUFF |
| ATTORNEY FOR RESPONDENT: | OFFICE OF THE ATTORNEY GENERAL BY: MELANIE K. DOTSON THOMAS |
| DISTRICT ATTORNEY: | FORREST ALLGOOD |
| NATURE OF THE CASE: | CIVIL - DEATH PENALTY - POST-CONVICTION |
| DISPOSITION: | PETITION FOR POST-CONVICTION RELIEF DENIED -12/14/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

¶1. Quintez Wren Hodges was convicted of capital murder and sentenced to death for the murder of Isaac Johnson. *Hodges v. State*, 912 So.2d 730 (Miss. 2005).

¶2. This Court considered the following issues on direct appeal: (1) admission of evidence of lenient sentencing recommendation for previous burglary charge; (2) prosecution's improper closing argument; (3) admission of evidence of prior criminal charges; (4) ineffective assistance of counsel; (5) improper instruction on ineligibility for parole; (6)

defective indictment; (7) death penalty eligibility; (8) exclusion of prospective juror for cause; (9) denial of mistrial for admission of previous burglary charge; (10) admission of evidence of other crimes; (11) admission of photograph of victim; (12) refusal of lesser offense instructions; (13) insufficient evidence on kidnaping charge; (14) submission of avoiding lawful arrest aggravator; (15) conviction of kidnaping a violation against double jeopardy; (16) failure to have transcription of instructions in record; (17) cumulative error. *Hodges*, 912 So.2d at 747-48. This Court affirmed the conviction and sentence on March 10, 2005.

¶3. Hodges's petition for writ of certiorari was denied by the United States Supreme Court on November 28, 2005. *Hodges v. Mississippi*, 126 S.Ct. 739, 163 L.Ed.2d 579 (2005).

¶4. Hodges subsequently filed his Petition for Post-Conviction Relief with this Court. The State has filed its Response, and Hodges has filed his Reply Memorandum.

¶5. The Mississippi Uniform Post-Conviction Collateral Relief Act contains several procedural bars found in Miss. Code Ann. § 99-39-21 (2000). Most relevant for the purposes of this case is the doctrine of res judicata in § 99-39-21(3). Hodges has raised in his Petition for Post-Conviction Relief many of the issues he raised on direct appeal. Some of these issues are supported by information submitted here for the first time. The State argues that the issues are barred by res judicata. Hodges states that the procedural bars "generally do not or should not apply here." We will discuss the procedural bar further as it applies to each issue.

¶6. Hodges raises the following issues in his Petition for Post-Conviction Relief:

2

I.    BECAUSE OF PROSECUTORIAL MISCONDUCT THROUGH IMPROPER CROSS EXAMINATION AND THE INTRODUCTION OF FALSE EVIDENCE DEPRIVED QUINTEZ HODGES OF A FUNDAMENTALLY FAIR TRIAL AND MANDATES HIS DEATH SENTENCE BE VACATED BECAUSE OF PREVIOUS VIOLATIONS OF HIS SIXTH, EIGHTH, FOURTEENTH AMENDMENT RIGHTS.

II.   IN ADDITION AND ENHANCEMENT OF THE PROSECUTORIAL MISCONDUCT AND FALSE TESTIMONY ELICITED BY THE STATE OF MISSISSIPPI, THE TRIAL COURT ERRED IN ADMITTING HIGHLY PREJUDICIAL AND INFLAMMATORY TESTIMONY AND IMPROPER EVIDENCE CONCERNING HODGES'S PREVIOUS CRIMINAL CHARGES AT SENTENCING, CONTRARY TO THE PROVISIONS OF RULES 403 AND 404 OF THE MISSISSIPPI RULES OF EVIDENCE, AND AS A RESULT, HODGES WAS DENIED A FUNDAMENTALLY FAIR TRIAL AS GUARANTEED BY THE UNITED STATES AND THE MISSISSIPPI CONSTITUTIONS.

III.  QUINTEZ HODGES WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AT ALL STAGES OF THIS CAPITAL MURDER PROSECUTION.

IV.   THE TRIAL COURT ERRED IN FAILING TO ACCURATELY INSTRUCT THE JURY REGARDING HODGES'S INELIGIBILITY FOR PAROLE, DENYING HODGES AN ACCURATE AND RELIABLE SENTENCING DETERMINATION IN VIOLATION OF THE MISSISSIPPI AND UNITED STATES CONSTITUTIONS.

V.    THE PROSECUTOR COMMITTED PLAIN REVERSIBLE ERROR DURING SENTENCING ARGUMENT BY IMPROPER AND UNFAIRLY PREJUDICIAL COMMENTS AND AS A RESULT, HODGES WAS DENIED A FUNDAMENTALLY FAIR TRIAL.

VI.   THE CAPITAL MURDER INDICTMENT WAS FLAWED FOR FAILURE TO PROPERLY CHARGE THE OFFENSE AND DENIED HODGES AN OPPORTUNITY TO PROPERLY PREPARE A DEFENSE.

VII. THE DEATH SENTENCE IN THIS CASE MUST BE VACATED BECAUSE THE INDICTMENT FAILED TO CHARGE A DEATH PENALTY ELIGIBLE OFFENSE.

VIII. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN REMOVING FOR CAUSE A JUROR QUALIFIED TO SERVE UNDER CONSTITUTIONAL STANDARDS.

IX. THE TRIAL COURT ERRED IN FAILING TO GRANT A DEFENSE REQUESTED MISTRIAL FOLLOWING THE IMPROPER INTRODUCTION OF OTHER CRIMES, WRONGS OR ACTS EVIDENCE IN VIOLATION OF RULES 403 AND 404 OF THE MISSISSIPPI RULES OF EVIDENCE, AND FURTHER, ERRED IN FAILING TO ADMONISH THE JURY TO DISREGARD SUCH EVIDENCE, OR IN THE ALTERNATIVE, ERRED IN FAILING TO CHARGE THE TRIAL JURY *SUA SPONTE* WITH A LIMITING INSTRUCTION CONCERNING THE ADMISSION OF SUCH EVIDENCE.

X. THE TRIAL COURT COMMITTED PLAIN ERROR BY ALLOWING THE INTRODUCTION OF EVIDENCE OF OTHER CRIMES OF HODGES IN VIOLATION OF RULES 403 AND 404, M.R.E. WITHOUT FIRST CONDUCTING A PROPER PROBATIVE VALUE VERSUS PREJUDICIAL EFFECT ANALYSIS AND WITHOUT ANY LIMITING/CAUTIONARY INSTRUCTION.

XI. THE TRIAL COURT ERRED IN ALLOWING THE INTRODUCTION OF A PHOTO OF THE DECEASED WHERE IT WAS UNNECESSARY TO ESTABLISH A DISPUTED FACT AND WAS HIGHLY PREJUDICIAL, DENYING HODGES A FAIR TRIAL.

XII. THE TRIAL COURT ERRED IN DENYING DEFENSE REQUESTED LESSER OFFENSE INSTRUCTIONS ON MANSLAUGHTER AND TRESPASSING, AS THE SAME WAS SUPPORTED BY THE EVIDENCE AND SUCH DENIAL UNFAIRLY PROHIBITED HODGES FROM PRESENTING EVERY DEFENSE THEORY OF THE CASE TO THE TRIAL JURY, IN VIOLATION OF HIS FUNDAMENTAL RIGHTS AS GUARANTEED BY THE UNITED STATES AND MISSISSIPPI CONSTITUTIONS.

**XIII.** THE TRIAL COURT ERRED IN ALLOWING THE JURY TO CONSIDER THE UNCONSTITUTIONALLY DUPLICATIVE AGGRAVATING CIRCUMSTANCE OF THE FELONY OF BURGLARY, WHICH WAS ALSO USED TO ELEVATE THE CRIME TO CAPITAL MURDER.

**XIV.** THE TRIAL COURT ERRED IN ALLOWING THE JURY TO CONSIDER THE INVALID AGGRAVATOR OF AVOIDING ARREST, WHICH THE JURY USED IN SUPPORT OF A SENTENCE OF DEATH, DENYING HODGES A RELIABLE SENTENCE AS GUARANTEED BY THE UNITED STATES AND THE MISSISSIPPI CONSTITUTIONS.

**XV.** THE TRIAL COURT ERRED IN FAILING TO MAKE A COMPLETE RECORD OF THE INSTRUCTIONS OF LAW UPON WHICH JURORS WERE TO RELY IN DETERMINING THEIR VERDICTS.

**XVI.** THE AGGREGATE ERROR IN THIS CASE REQUIRES REVERSAL OF THE CONVICTION AND DEATH SENTENCE.

### FACTS

¶7. On the night of July 20, 1999, Hodges broke into the home of his ex-girlfriend, Cora Johnson, in Lowndes County, Mississippi, and kidnaped Cora Johnson and her infant daughter. While at the home Hodges shot and killed Cora Johnson's brother, Isaac. Hodges then drove Cora and her daughter to Alabama. Cora testified that while in Alabama Hodges forced her into the back seat of the car and raped her at gunpoint. Hodges then drove Cora and her daughter back to her mother's home and turned himself in to the police.

### DISCUSSION

### I. PROSECUTORIAL MISCONDUCT.

¶8. At his sentencing hearing Quintez Hodges called his mother, Johnnie Hodges, as a witness and also took the stand in his behalf. Johnnie Hodges was cross-examined by the

5

State as to a guilty plea hearing held in 1998 on a burglary charge for Quintez, cause no. 98-430-CR1, Lowndes County Circuit Court. The State asked Johnnie Hodges if Bessie Tatum, mother of Isaac and Cora Johnson, had asked that Quintez be placed in the RID program. Hodges said that all she remembered was the State asking for seven years in the penitentiary. The State asked Johnnie about the presence of then Assistant District Attorney James Kitchens, at the hearing, requesting a fifteen-year sentence for Quintez. Johnnie did not remember anything, except a seven-year sentence. The State asked the same questions on cross-examination of Quintez Hodges. He also denied or did not recall anything about Bessie Tatum not wanting him to go the penitentiary or about James Kitchens's presence at the hearing.

¶9. The State then called James Kitchens as a rebuttal witness. Kitchens testified that he handled Hodges's plea hearing for the State in November 1998. Kitchens testified that he met with Hodges's attorney, William Bambach, and that Bambach had talked to Bessie Tatum and she did not want Hodges to go to the penitentiary. Kitchens testified that he met with Tatum and she told Kitchens that she did not want Quintez to go to the penitentiary. Kitchens testified that Quintez Hodges put on a couple of witnesses to ask for a lighter sentence, because the State was asking for fifteen-years. Kitchens testified that at the conclusion of the hearing William Bambach stated that Bessie Tatum told him that she did not want Quintez to go to the penitentiary because Quintez was the father of her grandchild. Kitchens testified that he stated that he had spoken to Tatum and that was what she wanted. Kitchens testified that the State retired two other criminal counts as a result of Quintez's

6

guilty plea. The State then, on closing argument at Hodges's sentencing hearing, informed the jury that

> in November of 1998, whether he [Quintez Hodges] wants to acknowledge it or not, he was given a huge measure of grace because rather than being sent to the penitentiary for 15 years as the State of Mississippi was seeking, he received intercession from the most unlikeliest of sources and through her good will and through her efforts this defendant was sentenced instead to the functional equivalent of probation. Three weeks after his release from custody, after being given a second chance of monumental proportions, he kills and kidnaps.

¶10. Quintez Hodges raised the issue of prosecutorial misconduct on direct appeal. Hodges attempted to show that Kitchens's testimony at the sentence hearing was false by comparing it to a transcript of the 1998 plea hearing. This Court did not consider the November 1998 plea hearing transcript as it was not part of the appeal record. The Court stated:

> Hodges argues that according to *Branch v. State*, 882 So. 2d 36, 49 (Miss. 2004), this Court is allowed to consider such extraneous evidence not in the record. However, this Court in *Branch* clearly set forth that such appendices which were not part of the trial record were to be considered only on the *Atkins* and ineffective assistance of counsel issues. Here, during oral argument, defense counsel conceded that he was not pursuing this issue as ineffective assistance of counsel, but rather was doing so under the theory of prosecutorial misconduct. Also, this Court has recently amended Rule 22 of the Mississippi Rules of Appellate Procedure. Even though this amendment does not apply to the case sub judice, this Court holds that the plea hearing, which is not in the record, is barred from consideration and *Branch* does not allow this Court to consider such extraneous evidence. To make it clear what this Court can consider on direct appeal in future cases, Rule 22 has been amended to state that "issues which may be raised in post-conviction proceedings may also be raised on direct appeal" *if such issues are based on facts fully apparent from the record*. M.R.A.P. 22 (emphasis added).

*Hodges*, 912 So.2d at 750. This Court then found that the issue was procedurally barred because of lack of defense objection to the testimony in question but proceeded to consider the issue on the merits. *Id.* at 750-51. This Court found that while it would have been

7

improper for the State to ask these questions on cross-examination without evidentiary basis, the rebuttal testimony of James Kitchens provided an evidentiary basis. *Id.* This Court further stated that, in order to show a denial of due process, Hodges would have to show "(1) the testimony was false; (2) the testimony was material to the verdict, and (3) the prosecutor knew or believed the testimony to be false," *Id.* at 751 (citing *Westley v. Johnson*, 83 F.3d 714, 726 (5th Cir. 1996)). The Court found that Hodges could not prove these elements. *Id.*

¶11. Hodges raises this issue again in his request for post conviction relief, with the transcript of the plea hearing attached.

¶12. The State argues that this issue is barred by res judicata, stating that it was considered on direct appeal by this Court on its merits. The State cites *Crawford v. State*, 867 So.2d 196, 202 (Miss. 2003), where this Court stated:

> Post-conviction review is a limited proceeding whereby this Court will only review "those objections, defenses, claims, questions, issues or errors which in practical reality could not or should not have been raised at trial or on direct appeal." *Cabello v. State*, 524 So. 2d 313, 323 (Miss. 1988) (quoting Miss. Code Ann. § 99-39-3(2) (Supp. 2003)).

> Claims and theories that could have been but were not presented to the trial court or to this Court on direct appeal are procedurally barred from being reviewed by this court on post-conviction review. *Lockett v. State*, 614 So. 2d 888, 893 (Miss. 1992). Likewise, all issues, both factual and legal, that were decided at trial and/or on direct appeal are barred from review as *res judicata*. Miss. Code Ann. § 99-39-21(3) (Supp. 2003).

> The burden of proving that no procedural bar exists falls squarely on the petitioner. *Lockett*, 614 So. 2d at 893. For this Court to hear claims or theories that were not presented at trial or on direct appeal, the petitioner must show cause for not having already brought the claim and that this caused actual prejudice to his case. *Lockett v. State*, 614 So. 2d at 893. To create an exemption from the procedural bar under res judicata principles, petitioner must show that his "claim is so novel that it has not previously been litigated" or that "an appellate court has suddenly reversed itself on an issue previously

thought settled." *Id.* (quoting *Irving v. State*, 498 So. 2d 305, 311 (Miss. 1986)). Petitioner will also defeat procedural bar if he can demonstrate that "he has evidence, not reasonably discoverable at the time of trial, which is of such nature that it would be practically conclusive that had such been introduced at trial it would have caused a different result in the conviction or sentence." Miss. Code Ann. § 99-39-23(6).

¶13. Hodges relies on *Havard v. State*, 928 So.2d 771 (Miss. 2006), where this Court cited its decision in *Hodges* and discussed whether the Court would consider documents not in the appeal record in support of issues raised by the defendant. This Court held that documents which were not included in the appeal record would not be considered. *Havard*, 928 So.2d at 785-86.

¶14. The law supports the State's argument. On direct appeal, the Court considered and decided the issue of prosecutorial misconduct on the merits. Therefore, res judicata bars Hodges from raising this issue again.

## II. ADMISSION OF EVIDENCE OF OTHER OFFENSES.

¶15. Hodges next argues that the trial court erred in allowing the State to improperly cross-examine him and his witnesses presented during the sentencing hearing. Each witness will be discussed separately.

¶16. **Lisa Hodges** - Lisa Hodges is Quintez Hodges's sister. During cross-examination by the State she was asked about Quintez escaping from jail twice. Hodges argues that evidence of escape attempts was not relevant to any of the statutory aggravating factors and was improper rebuttal to Lisa Hodges's testimony. Hodges argues that it could have improperly influenced the jury as to sentencing because of the implication of future dangerousness. As the State points out, this issue was raised by Hodges on direct appeal. This Court stated:

9

The prosecution has no right to introduce evidence of wrongs and bad acts to prove Hodges's character or to show he acted in conformity therewith, unless it is competent rebuttal evidence in the face of the showing of Hodges's good character made on direct examination of this witness. *Hansen v. State*, 592 So. 2d 114, 148 (Miss. 1991) (citing *Simpson v. State*, 497 So. 2d 424, 428-29 (Miss. 1986); *Winters v. State*, 449 So. 2d 766, 771 (Miss. 1984)). M.R.E. 404(b) provides that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The State questioned Hodges's sister about a prior bad act, the two attempts to escape jail. On direct examination, Hodges's sister testified that Hodges's character was good, that he respected his elders, did not disobey his parents, and that he was not a violent person and never fought. Her direct examination testimony opened the door to the State to ask these questions. There was testimony on direct that he was a good boy that respected his elders. The introduction of the two prior escapes from the jail was not error.

*Hodges*, 912 So.2d at 755.

¶17.   **Chris Hodges** - Chris Hodges is Quintez Hodges's nephew.   During cross-examination by the State Chris was questioned about Quintez Hodges's arrests for burglary of a school in 1997 and burglary and attempted sexual battery in 1998.  Quintez Hodges argues that evidence of these arrests was not relevant to any statutory aggravating factor, nor was it proper rebuttal to Chris Hodges's testimony.  As the State points out, this issue was raised by Hodges on direct appeal.  This Court stated:

> As stated previously, the prosecution has no right to introduce evidence of wrongs and bad acts to prove Hodges's character or to show he acted in conformity therewith, unless it is competent rebuttal evidence in the face of the showing of Hodges's good character made on direct examination of this witness. *Hansen*, 592 So. 2d at 148. On direct examination, Chris testified that Hodges's character was good and that he was not disruptive and not the kind

10

of person to commit this crime. He also testified that Hodges did not have problems with the law prior to the charge of burglary of Cora's house and that the problems with the law stemmed from his relationship with Cora. This direct testimony opened the door to bring in the prior bad acts that occurred prior to the burglary of Cora's house and the bad acts that had nothing to do with Cora. The introduction of these other burglaries and the sexual battery was not error.

*Hodges*, 912 So.2d at 755.

¶18.   **Quintez Hodges** - Quintez Hodges testified at the sentencing phase that he had been charged with one other crime, the burglary of Cora Johnson's house.  On cross-examination the State questioned Hodges about other charges, and introduced into evidence an indictment in cause no. 98-432-CR1, charging Hodges with breaking into the dwelling house of Tasha Martin and attempted sexual battery of Tasha Martin.  Hodges did not object to the introduction of the indictment at trial.  Hodges now argues that this amounted to plain error, as an indictment cannot be used for impeachment or rebuttal.  As the State points out, this issue was raised by Hodges on direct appeal.  This Court stated:

Although the introduction of the indictment was improper impeachment evidence, such error was harmless. The jury, on many previous occasions throughout the sentencing phase, heard testimony regarding these other crimes. Hodges was not denied a substantial right by the introduction of this indictment.

The State argues that the introduction of this indictment was not improper because it was used to rebut Hodges's inferences and direct statements that his prior criminal history was insignificant. Indeed, this Court has held that "the State is allowed to rebut mitigating evidence through cross-examination, introduction of rebuttal evidence or by argument." *Wiley v. State,* 750 So. 2d 1193, 1202 (Miss. 1999) (quoting *Turner v. State,* 732 So. 2d 937 at 950).

Notwithstanding the procedural bar, this issue is without merit.

*Hodges*, 912 So.2d at 757-58.

11

¶19.    The State argues that all three parts of this issue were raised on direct appeal and Hodges is barred by res judicata from raising the issue here again on the post-conviction level.  Miss. Code Ann. § 99-39-21 (3).  This Court agrees that Hodges is barred by res judicata from again raising this issue.

### III.  ASSISTANCE OF COUNSEL.

¶20.    Hodges next argues that he was denied effective assistance of counsel.  He does not differentiate between his two trial lawyers but most of his argument is directed toward the actions of Michael D. Miller.  This Court has stated the following on ineffective assistance of counsel and the standard provided in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):

> "The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A defendant must demonstrate that his counsel's performance was deficient *and* that the deficiency prejudiced the defense of the case. *Id.* at 687, 104 S.Ct. 2052. "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Stringer v. State,* 454 So.2d 468, 477 (Miss.1984) (citing *Strickland v. Washington,* 466 U.S. at 687, 104 S.Ct. 2052). The focus of the inquiry must be whether counsel's assistance was reasonable considering all the circumstances. *Id.*
>
>> Judicial scrutiny of counsel's performance must be highly deferential. (citation omitted) ... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the

12

> circumstances, the challenged action 'might be considered sound trial strategy.'

> *Stringer,* 454 So.2d at 477 (citing *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052). Defense counsel is presumed competent. *Id.*

>> Then, to determine the second prong of prejudice to the defense, the standard is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Mohr v. State,* 584 So.2d 426, 430 (Miss.1991). This means a "probability sufficient to undermine the confidence in the outcome." *Id.* The question here is:

>>> whether there is a reasonable probability that, absent the errors, the sentencer–including an appellate court, to the extent it independently reweighs the evidence--would have concluded that the balance of the aggravating and mitigating circumstances did not warrant death. *Strickland,* 466 U.S. at 695, 104 S.Ct. at 2068.

>> There is no constitutional right then to errorless counsel. *Cabello v. State,* 524 So.2d 313, 315 (Miss.1988); *Mohr v. State,* 584 So.2d 426, 430 (Miss.1991) (right to effective counsel does not entitle defendant to have an attorney who makes no mistakes at trial; defendant just has right to have competent counsel). If the post-conviction application fails on either of the *Strickland* prongs, the proceedings end. *Neal v. State,* 525 So.2d 1279, 1281 (Miss.1987); *Mohr v. State,* 584 So.2d 426 (Miss.1991).

> *Davis v. State,* 743 So.2d 326, 334 (Miss.1999) (citing *Foster v. State,* 687 So.2d 1124, 1130 (Miss.1996)).

***Brown v. State***, 798 So.2d 481, 493-94 (Miss. 2001).

¶21.   Hodges presents at least twelve arguments under this issue, but like the rest of his Petition, most of the issue repeats what was raised and rejected by this Court on direct appeal.  The State argues that Hodges'ss argument is barred by res judicata, citing ***Sanders v. State***, 846 So.2d 230, 239 (Miss. Ct. App. 2002), where the Court of Appeals stated:

13

"Rephrasing direct appeal issues for post-conviction purposes will not defeat the procedural bar of res judicata."  This quote referred to a search and seizure issue.  We have treated ineffective assistance of counsel differently.  Once again Hodges cites **Havard,** where this Court considered Havard's ineffective assistance of counsel claims.  The questions raised in **Havard** were whether to consider the ineffective assistance claims on direct appeal or defer consideration until the post-conviction stage, and whether to consider extraneous materials not found in the appeal record.  This Court considered the claims but not the extraneous materials.  This Court further found: "Having raised this issue with different counsel on direct appeal, Havard has preserved his right to raise this issue, supported by affidavits, in future post-conviction proceedings."  **Havard**, 928 So.2d at 786; *see also* **McGee v. State**, 929 So.2d 353, 365 (Miss. Ct. App. 2006) (same).  Where Hodges raised ineffective assistance of counsel on direct appeal, and raises it again here, supported by extraneous materials that were not available on direct appeal, our consideration of the issue is not barred by res judicata. Where Hodges raises ineffective assistance of counsel at the post-conviction stage, and it is the same issue raised on direct appeal but only rephrased, res judicata will apply.

14

### A. Failure to support motion to suppress confession

¶22. Hodges first argues that trial counsel was ineffective where he made a motion to suppress Hodges's confession, but did not properly support the motion with sufficient evidence so that it would be granted. Keven Pitre, Lowndes County Sheriff Department, took Hodges's statement in which he confessed to shooting Isaac Johnson. Hodges claims that Pitre testified at Hodges's preliminary hearing that he told Hodges that he was facing a possible death sentence or life imprisonment for shooting Johnson. Hodges argues that Pitre then testified at the suppression hearing that Hodges didn't ask any questions before signing the statement and rights form. Hodges raised this allegation of inconsistent testimony on direct appeal. This Court found that Pitre did not give inconsistent testimony, as the preliminary hearing testimony dealt with Hodges's answers once he was being questioned, while the suppression hearing testimony dealt with Hodges's conduct while being read his rights, before the questioning began, and counsel was not deficient. *Hodges*, 912 So.2d at 760-61.

### B. Failure to investigate and confront prosecution witnesses

¶23. Hodges argues that his trial counsel should have impeached prosecution witness Anthony Betts with his guilty plea to a charge of burglary. Hodges argues that Betts's testimony that Hodges's "was going to buy a gun and shoot somebody" was crucial evidence as to Hodges's intent to assault. This Court found that Betts's testimony was mostly cumulative, and without it there was ample testimony to support a conviction. *Hodges*, 912 So.2d at 762-63.

15

¶24. In addition, Hodges now argues that his counsel was also ineffective for failure to investigate and confront Cora Johnson at trial. Hodges argues that Cora Johnson wrote to Hodges numerous times while he was incarcerated, and the letters would have shown that she at one moment stated that she loved Hodges and another stated that she had moved on to other men. Hodges further states that his niece, Lakasha Hodges, would have testified that Cora Johnson called Hodges repeatedly on the night of the shooting. While this information might have been helpful, and defense counsel should have been aware of it, its persuasive effect is questionable. However unfair or manipulative Cora Johnson might have been in their relationship, Hodges still broke into her house and killed her brother.

### C. Failure to properly advise on plea bargain

¶25. Hodges argues that although the only two possible sentencing options in the event he was convicted of capital murder were death and life imprisonment without parole, he was incorrectly informed by his counsel and the trial court that a third option in the event of conviction was life imprisonment with parole. Hodges stated trial counsel told him that the State had offered a plea of life without parole, but he had rejected it because of the possibility of life with parole. On direct appeal this Court found that Hodges did not prove that he would have accepted the plea offer if he had been advised correctly, and counsel was not ineffective. *Hodges*, 912 So.2d at 763.

### D. Failure to present available evidence in mitigation

¶26. Hodges make a general argument here, and it appears that this issue serves as an introduction to the specific arguments made in the next four issues. Hodges does argue that an instruction offered by his trial counsel contained four mitigating circumstances and the

16

trial court erred in refusing the instruction. Hodges states that the trial court only allowed one mitigating circumstance to go to the jury, but also states that "[t]here was no evidence nor argument offered at trial to support the first three factors."

¶27. In his Reply/Supplement Hodges identifies numerous members of his family that have attached affidavits and say now that they would have testified if they had been called as witnesses. Their testimony would have included Quintez's family history and his relationship with his mother and his relationship with Cora Johnson. Hodges also states that his cousin, Lakasha Hodges, could have disputed the testimony of prosecution witness Anthony Betts as to events of the night of the shooting. Betts testified that Quintez Hodges had stated the weekend before the shooting that he was going to buy a gun and kill somebody. This was the real value of Betts's testimony and Lakasha Hodges does not claim to be able to dispute this. In addition, each time one of the proposed witnesses testified that Quintez Hodges was a good, peaceful, misunderstood person, they would have opened the door for cross-examination and renewed emphasis by the State on Hodges's prior criminal actions, as happened to Lisa and Chris Hodges, who testified during sentencing.

**E. Failure to subpoena an expert witness from Whitfield**

¶28. Hodges next argues that his trial counsel should have called a witness from Whitfield as an expert in mitigation. Hodges states that trial counsel was having some communication with psychiatrist Dr. Phillip Meredith during the trial. Hodges specifically argues that mental health experts could have provided helpful testimony concerning his youth, his prior escape from county jail, his history of drug abuse, his limited education and his difficult relationship with Cora Johnson. When considered on direct appeal this Court found that this evidence

17

was presented to the jury through other witnesses except for evidence of drug abuse, which this Court found was "not so compelling that there is a reasonable probability at least one juror could reasonably have determined that death was not an appropriate sentence." *Hodges*, 912 So.2d at 766.

¶29. Hodges now supplies additional opinions from mental health experts. Dr. Karen S. Wiviott, a psychiatrist, evaluated Hodges in June 2006 and found that

> Hodges was an immature and impulsive 18-year-old who came from a background of poverty and emotional deprivation. Disruption in both of his parental relationships during his early years left him with rejection sensitivity and vulnerability to abandonment. Only three weeks out of prison, he was especially vulnerable to rejection by Cora Johnson, who was central to his hopes for the future. Her inconsistency in the preceding months and weeks and her betrayal on the night of July 20, 1999 had a profound effect on Mr. Hodges that contributed significantly to his actions on that night.

¶30. Dr. Wiviott's psychiatric evaluation is also interesting for what it does not include. Unlike so many capital cases, there is no allegation of child abuse endured by Hodges; Hodges's father did not live with Quintez and his mother but did have a relationship with Hodges when Hodges was growing up. Hodges's mother reportedly was an alcoholic, but she stopped drinking when Quintez was young and he did not remember these episodes. Quintez used marijuana regularly, and alcohol less so in his teenage years, but nothing tied this use to any of his problems with the law. There is no allegation of retardation or insanity. Hodges's witnesses agree that Hodges's behavior worsened when his family moved from Columbus to Caledonia when he was thirteen.

¶31. Dr. Marc Zimmerman, a psychologist, also performed a psychological evaluation of Hodges in June 2006. Dr. Zimmerman found that Hodges was suffering from post-traumatic

18

stress disorder. We find that even if counsel had been able to produce these evaluations at the time of trial, the evaluations are not that compelling, particularly in the context of a death penalty case.

### F. Failure to introduce the victim impact statement

¶32. Hodges next argues that his counsel was ineffective for failure to introduce the victim impact statement of Bessie Tatum, the mother of Isaac and Cora Johnson. Hodges argues that the statement shows that Bessie Tatum did not want him put to death and this might have influenced the jury. On direct appeal this Court found that the statement was not that helpful, and that the decision not to make the jury aware of the statement was acceptable trial strategy. *Hodges*, 912 So.2d at 766-67.

### G. Failure to adequately confront prosecution witness Johnny Robbins

¶33. Johnny Robbins, a probation officer from the MDOC, was called as a witness for the sole purpose of introducing Hodges's prior burglary conviction into evidence at sentencing. Hodges argues that trial counsel should have objected to the introduction of the copy of the conviction and should have brought out personal information about Hodges on cross-examination. On direct appeal this Court found that the copy of the conviction was properly admitted, so counsel was not ineffective for failure to object. This Court further found that "there is no indication that Robbins knew Hodges personally and could have testified to" information of a personal nature. This Court further found that, assuming trial counsel failed to adequately cross-examine Robbins, there was no prejudice. *Hodges*, 912 So.2d at 767.

¶34. Hodges argues that defense counsel should have brought out, through Johnny Robbins or some other corrections officer, that Hodges exhibited no behavioral problems during his

19

time in RID. While this might have been helpful, it also might have reminded the jury that Hodges was given an opportunity to avoid the conduct which resulted in his death sentence and wasted it.

### H. Denial of overnight recess before closing argument

¶35. Hodges argues that trial counsel was rendered ineffective by the trial court's failure to allow a recess after the close of evidence at the sentencing phase. Hodges states that it was error not to allow counsel a reasonable time to prepare and the jury some time to rest before closing arguments and deliberations as to sentence. On direct appeal this Court found no error in stating that "[t]here is no evidence in the record of an undue burden upon counsel in continuing the case to conclusion and no indication in the record that the jury had difficulty in proceeding with the case." *Hodges*, 912 So.2d at 767-68.

### I. Failure to properly prepare Hodges for his testimony

¶36. Hodges argues that counsel was ineffective for failure to prepare him as a witness for his sentencing hearing once Hodges decided to testify. Hodges states that because of this lack of preparation, he was "opened up on cross-examination to all prior charges because defense counsel failed the explain the difference between a 'charge' and a conviction." On direct appeal this Court found that, even assuming defense counsel was deficient in not making sure Hodges knew this difference, Hodges still had not shown prejudice. *Hodges*, 912 So.2d at 768-69.

### J. Lead trial counsel was ineffective in this matter because of inadequate experience, time, resources and personal circumstances

20

¶37.    Hodges next discusses why Michael D. Miller was ineffective.  Hodges states that Miller was ineffective because of his inexperience, in that he had been admitted to the Bar less than a year before Hodges's trial and had not previously tried a case before a jury in circuit court.  Hodges states that Miller was suffering from bi-polar disorder.  Hodges states that  Miller was using various prescription and non-prescription drugs around the time of Hodges's trial, including marijuana, methamphetamine and cocaine.  After the trial Miller's parents sought to have him committed because of his suicidal thoughts and paranoid delusions.  In January 2003, Miller was found to be a "mentally ill person who poses a substantial likelihood of physical harm to himself" and was committed by the Chancery Court of Lowndes County to East Mississippi State Hospital.

¶38.    Hodges cites *Jermyn v. Horn*, 266 F.3d 257 (3rd Cir. 2001), where the United States District Court granted Jermyn another sentencing hearing after finding that his counsel was ineffective in failing to timely prepare and investigate possible claims involving his client's mental health.  Hodges states that the comparisons with his case and Jermyn are "exact," except that in Jermyn's case there was a wealth of information to find by investigation, including mental health professionals who had found Jermyn to be schizophrenic and evidence of a horrific childhood filled with physical and mental abuse committed by Jermyn's father.  There are no such factors present in Hodges's case.

¶39.    The State argues that if Michael Miller provided ineffective assistance of counsel, as this Court found on direct appeal, then a new or more compelling explanation for the same behavior is irrelevant.  The State argues that what is important in an ineffective assistance claim is the behavior, not the explanation for the behavior.  In *Berry v. State*, 765 F.2d 451,

21

454 (5th Cir. 1985), the Fifth Circuit noted that whether Berry's attorney had used drugs during Berry's trial was disputed, and added: "In any case, under *Strickland* the fact that an attorney used drugs is not, *in and of itself*, relevant to an ineffective assistance claim. The critical claim is whether, for whatever reason, counsel's performance was deficient and whether that deficiency prejudiced the defendant. We therefore concentrate on Berry's specific allegations of deficient performance and prejudice." *See also* **Guy v. Cockrell**, No. 01-10425, 2002 U.S. App. LEXIS 28184, at *10 (5th Cir. July 23, 2002) (counsel's admitted drug use during trial only relevant if inmate could show where counsel's performance was deficient because of drug use, citing **Berry**); **Burnett v. Collins**, 982 F.2d 922 (5th Cir. 1993) (same); **Gonzales v. State**, 915 So.2d 1108, 1111 (Miss. Ct. App. 2005) (failure to show prejudice from attorney's alleged drug use). This evidence of drug use and illness may explain some of Michael Miller's behavior before and during Hodges's trial, but it does not change this Court's finding on direct appeal that Michael Miller provided ineffective assistance of counsel.

**K.      Trial counsel was ineffective for failure to adequately argue for investigative assistance and was likewise rendered ineffective by the trial court's denial of investigation assistance**

¶40.    Hodges argues that Michael Miller requested that the circuit court appoint an investigator, but failed to present to the court ample reason with supporting evidence as to why an investigator was needed. This Court cannot find such a motion in the appeal record, though Miller did testify at a pretrial hearing that he might file such a motion. Hodges next states that it would have been relatively easy for Miller to show the need for an investigator, especially considering the short time he had before trial. While Miller might have needed

22

an investigator, what he needed more than anything was sufficient time to prepare for trial, which was impossible given his voluntary entrance into this case on August 20, 2001, for a case set for September 10, 2001. As a practical matter, finding an investigator within that time frame and the investigator's ability to accomplish any work of value are doubtful. Finally, Hodges states that "[i]t should be noted that at all times pertinent to the trial, Hodges was incarcerated and had been declared indigent. His fortune had not changed while he was in jail awaiting trial." Despite this allegation of financial status, someone hired Miller to represent Hodges. The trial judge specifically noted this when Miller mentioned that he might ask for an investigator: "He's not indigent because he's hired counsel."

¶41. The Court finds that Hodges raised in his direct appeal the arguments found in parts A, C, F, H and I, and he is barred from raising those issues again here by res judicata. The remaining allegations of ineffective assistance of counsel made by Hodges are found to be without merit, as is this issue as a whole.

### IV. JURY INSTRUCTIONS ON PAROLE ELIGIBILITY.

¶42. Hodges next argues that the trial court erred in allowing the jury to be instructed that Hodges was eligible for a sentence of life imprisonment with the possibility of parole. He also argues that the problem was compounded when the State made the same allegation in its closing argument to the jury. As the State points out, this issue was raised by Hodges on direct appeal. This Court stated:

> While it is true that the statute [Miss. Code Ann. § 99-19-101] does provide for three alternatives, it is also true that the earned time allowance and parole statutes effectively eliminate the possibility of parole for someone convicted of capital murder. This is an inconsistency in statutes that needs to be addressed by the Legislature. However, the question now becomes whether

this inconsistency caused prejudicial error in the case at bar. Where the jury imposes the death penalty, the fact that the jury was given the option of parole does not constitute harmful error. As this Court stated in *Puckett v. State*, 737 So. 2d 322, 363 (Miss. 1999),

> the true harmful error would arise in those cases where the trial court strictly follows the language of § 99-19-101 in capital murder cases, submits all three options to the jury, and the jury selects the option of life imprisonment. In this instance, the defense could argue that the jury was misled in that they selected the life imprisonment sentence with the assumption that the defendant may be eligible for parole, when in reality the defendant would not be eligible for parole by virtue of the parole and earned time statutes.

The true harmful error situation did not occur in the case sub judice. The jury was given all three alternatives but it sentenced Hodges to death and not life imprisonment. Based on Williams and Puckett, this issue is without merit.

Furthermore, this Court finds that the language on the verdict form stating that "if the jury cannot agree on punishment, the court must sentence the Defendant to a term of life imprisonment with the possibility of parole" was improper because it was an incorrect statement of law. Pursuant to Miss. Code Ann. 99-19-101, the judge must "impose a sentence [**89] of imprisonment for life" when the jury cannot agree on the punishment and under our parole statutes a life sentence rendered pursuant to Miss. Code Ann. § 99-19-101 will automatically be a life without parole sentence. Even though this language in the verdict form was an improper statement of the law, such error was harmless since the jury, knowing that it had the life without parole option, chose death.

*Hodges*, 912 So.2d at 772. Hodges is barred by res judicata from raising this issue. *See* Miss. Code Ann. § 99-39-21 (3).

## V. IMPROPER COMMENTS BY PROSECUTION DURING SENTENCING CLOSING ARGUMENT.

¶43.  Hodges next argues that the State's closing argument amounted to reversible error because of the District Attorney's references to the September 11 terrorist attacks, which occurred during Hodges's trial, and some Biblical references. The arguments were made to

the jury on September 12, 2001. The allegation of plain error is made because there was no contemporaneous objection to the argument by defense counsel. As the State points out, this issue was raised by Hodges on direct appeal. This Court stated that "[c]onsidering the wide latitude given to attorneys for closing arguments and considering the State's comment in reference to the defense's own closing, Hodges's arguments are without merit and there [is] no unfair prejudice." **Hodges**, 912 So.2d at 754. Hodges is barred by res judicata from raising this issue.

## VI.    INDICTMENT FAILED TO PROPERLY CHARGE OFFENSE.

¶44.    Hodges next argues that his indictment was defective for stating that Hodges's burglary of the Johnson house was committed with intent to commit assault within the house, but failed to specify the intended victim of the assault. Hodges cites **State v. Berryhill**, 703 So.2d 250, 256 (Miss. 1997), where this Court stated: "[A] defendant . . . who has been indicted without specifying the burglary may find out on the eve of trial that the State *might* try to prove the burglary on different theories. Needless to say, different theories would plainly invite different defenses." Hodges alleges that the State's proof at trial as to assault was inconsistent, included numerous theories, and made preparation of a defense impossible. As the State points out, this issue was raised by Hodges on direct appeal. This Court stated the following on this matter:

> The indictment in the case sub judice complies with the rule set forth in *Berryhill*. The indictment charged Hodges with capital murder with the underlying felony of burglary. Since the underlying felony was burglary, the State was required to specify the underlying offense, which they did. It charged Hodges with burglary with the intent to commit an assault therein. This Court has stated that

25

> [t]he allegation of the ulterior felony intended need not,
> however, be set out as fully and specifically as would be
> required in an indictment for the actual commission of that
> felony. It is ordinarily sufficient to state the intended offense
> generally, as by alleging an intent to steal, or commit the crime
> of larceny, rape or arson.

*Booker v. State*, 716 So. 2d 1064, 1068 (Miss. 1998) (citing Am. Jur. 2d Burglary § 36 (1964)). Therefore, all the State was required to do was state the intended offense generally by alleging the intent to assault. The State did exactly what was required. Hodges was able to prepare a defense and was well aware, from the indictment, that the State intended to prove burglary with the intent to commit an assault therein. The State did not try to prove different theories of burglary as Hodges claims. The State set out to prove that Hodges went to Cora's house that night armed with a gun and intended to shoot Cora and/or Bessie Tatum. Hodges himself told Cora on the night of the shooting that he went to her house to shoot her and/or Bessie Tatum (if she had been home). Hodges also told his friend, Anthony Betts, that he was going to buy a gun and kill somebody. Hodges then went to Cora's house that night armed with a gun. Hodges has not shown that he was prejudiced in the preparation of his defense. This issue is without merit.

***Hodges***, 912 So.2d at 774-75. Hodges is barred by res judicata from raising this issue.

## VII. INDICTMENT FAILED TO CHARGE A DEATH PENALTY ELIGIBLE OFFENSE.

## XIII. JURY ALLOWED TO CONSIDER DUPLICATIVE AGGRAVATING CIRCUMSTANCE.

¶45. These issues were considered together by this Court on direct appeal. Hodges first argues that his indictment was improper because it failed to enumerate the aggravating factors and the mens rea element. Hodges also argues that it was improper for the trial court to allow the jury to find Hodges guilty of capital murder, with the underlying felony being burglary, and then allow burglary to be submitted to the jury for consideration as an aggravating factor in sentencing. As the State points out, these issues were raised by Hodges

26

on direct appeal. This Court considered the issues and found them to be without merit.

*Hodges*, 912 So.2d at 775-77. Hodges is barred by res judicata from raising these issues.

### VIII. REMOVAL OF JUROR.

¶46. Hodges next argues that the trial court erroneously upheld a challenge for cause by the State on venire person James Thomas, #69. Hodges argues that Thomas expressed consistent views during individual voir dire by the State and trial judge that did not justify removal from the venire. As the State points out, this issue was raised by Hodges on direct appeal. This Court stated the following on this matter:

> Likewise, in the case sub judice, the trial judge excluded the prospective juror because of his contradictory responses to the questions regarding the death penalty. This case is analogous to the *King* [*v. State*, 784 So.2d 884 (Miss. 2001)]case in that the juror stated in his questionnaire that he could never impose the death penalty but during questioning by the court he stated that he may be able to in the right case. He even went further and stated that he would favor life over death but when questioned by defense counsel he recanted this answer and stated that he could consider all possibilities. "It goes without saying that a potential juror who cannot give a straight answer would be very unlikely to follow the law." *King*, 784 So. 2d 884 at 888. "If jurors provide inconsistent answers regarding their feelings on the stated law of this state, they may be struck for cause." *Brown v. State*, 890 So. 2d 901, 910 (Miss. 2004). Given this potential juror's equivocal stance on the issue, the trial court did not abuse its discretion in striking him for cause.

*Hodges*, 912 So.2d at 778. Hodges is barred by res judicata from raising this issue.

### IX. INTRODUCTION OF EVIDENCE OF OTHER CRIMES.

¶47. Hodges next argues that the trial court erred in failing to grant a mistrial when Cora Johnson testified for the State that Hodges "broke in and me and my mother found him underneath my bed, and he got locked up for a year and a half." Hodges further argues that the trial court erred in failing to admonish the jury to disregard the evidence and in failing

27

to sua sponte approve a limiting instruction concerning this evidence. As the State points out, this issue was raised by Hodges on direct appeal. This Court stated the following on this matter:

> In the case sub judice, the prosecutor did not ask Cora about Hodges's jail time from burglarizing her house, but instead asked her about her relationship with Hodges, to which Cora mentioned his jail time he served when he broke into her house. The prosecutor thereafter directed Cora's testimony towards matters involving the relationship which resulted in a child, and the jail time was never again mentioned. Clearly, the prosecution did not deliberately elicit testimony regarding this other crime. As in *Watson*, even assuming arguendo that the answer constituted error, the error was harmless.
>
> Hodges also argues that it was error for the trial judge not to provide the jury with a limiting instruction, since the evidence was introduced. To support his argument, Hodges cites *Robinson v. State*, 735 So. 2d 208 (Miss. 1999), which held that the trial court's failure to sua sponte give a limiting instruction on prior bad acts was reversible error. However, *Robinson* was overruled by *Brown v. State*, 890 So. 2d 901 (Miss. 2004). In overruling *Robinson*, this Court held that the trial court is not required to issue a sua sponte limiting instruction when other crimes evidence has been admitted and the defense counsel has the burden of requesting such instruction. *Id.* "It is not per se prejudicial to a defendant if a jury simply hears an isolated instance of a crime or bad act in the course of a trial." *Id.* at 913. In the case sub judice, Hodges did not request a limiting instruction when this isolated instance of a crime or bad act came out during Cora's testimony. Since the trial court is not required to issue such an instruction without a request from Hodges, the trial court did not err when they did not give a limiting instruction.

*Hodges*, 912 So.2d at 779. Hodges is barred by res judicata from raising this issue.

## X. INTRODUCTION OF EVIDENCE OF OTHER CRIMES.

¶48. Hodges next argues that the trial court erred in allowing admission of evidence that Hodges sexually assaulted Cora Johnson after he kidnaped her and took her to Alabama. Hodges further argues that the trial court erred in failing to admonish the jury to disregard the evidence and in failing to sua sponte approve a limiting instruction concerning this

28

evidence. As the State points out, this issue was raised by Hodges on direct appeal. This Court stated the following on this matter:

> After the trial judge heard arguments from both sides the court determined that "this was a continuous event and transaction, and the State under case law is entitled to show the jury the complete picture of what happened. The Court finds that it is probative and the probative value outweighs the unfair prejudice and the objection is noted and overruled." In the case sub judice, Hodges was charged with capital murder with the underlying felony of burglary and he was also charged with the kidnaping of Cora Johnson. It was shown that Hodges broke into the house where he was confronted by the victim. After shooting Isaac once in the stomach, he went to Cora's room where she had just awakened. Hodges told Cora to get her stuff and that she was going with him. She told Hodges that she was not going anywhere with him and that is when he struck her across the head with the gun. Cora then woke her daughter and prepared to leave with Hodges. During the trip to Alabama, Cora testified that Hodges forced her into the back seat of the car, held a gun to her head and raped her while her daughter was lying in the front seat. The rape of Cora was integrally related in time, place and fact with the murder of Isaac Johnson. The rape arose out of a "common nucleus of operative facts" and was "integrally intertwined" with what happened to Isaac Johnson. *Wheeler v. State*, 536 So. 2d 1347, 1352 (Miss. 1988). As stated above, this Court has held that proof of another crime is admissible where the offense charged and that offered are so interrelated as to constitute a single transaction or occurrence or a closely related series of transactions or occurrences. *Neal*, 451 So. 2d at 759. The rape in the case sub judice is part of a closely related series of occurrences. Also, as this Court has stated in Neal, "we are concerned with the State's legitimate interest in telling a rational and coherent story of what happened." Id. Not only was the rape integrally intertwined with the murder of Isaac, the rape actually occurred while Cora was being held against her will. The trial court did not err in admitting evidence of the rape. The rape was admissible as part of the res gestae of the events surrounding the crime. This issue is without merit.

*Hodges*, 912 So.2d at 780-81. Hodges is barred by res judicata from raising this issue.

## XI. ADMISSION OF PHOTOGRAPH OF VICTIM.

¶49. Hodges next argues that the trial court erred in admitting into evidence a color photograph of Isaac Johnson's gunshot wound during Dr. Steve Hayne's testimony. As the

29

State points out, this issue was raised by Hodges on direct appeal. This Court stated the following on this matter:

> State's exhibit 10 shows the midsection of the body cleaned and washed but before the autopsy began. The picture does not depict him cut up, the picture only shows the midsection of the body with a tiny bullet hole above the navel. The Comment to M.R.E. 401 states that if there is any probative value, the rule favors admission of the evidence. The photograph at issue accurately depicts the wound inflicted upon the victim and the cause of death. It certainly does not rise to the level of gruesomeness noted in *McNeal* [*v. State,* 551 So.2d 151 (Miss. 1989)]. There is absolutely no blood anywhere in the photo, and there is nothing gory, gruesome or inflammatory about the picture. Dr. Hayne testified that the picture was taken to indicate the entrance of the gunshot wound and to show how such positioning affected his organs and blood loss, causing death. Photographs have evidentiary purpose when they describe the circumstances and cause of death. Accordingly, the trial court did not abuse its discretion in admitting the photograph.

*Hodges*, 912 So.2d at 782. Hodges is barred by res judicata from raising this issue.

## XII.   LESSER OFFENSE INSTRUCTIONS.

¶50.   Hodges next argues that the trial court erred in refusing to submit to the jury instructions on the lesser offenses of manslaughter and trespass. As the State points out, this issue was raised by Hodges on direct appeal. This Court stated the following on this matter:

> In sum, the trial court did not commit reversible error by refusing the manslaughter instructions. This Court has previously held that " if the killing was committed during the commission of one of the enumerated felonies in Miss.Code Ann. § 97-3-19(2)(e), one of which is burglary, capital murder is proven and the defendant is not entitled to a manslaughter instruction. *Id.* (citing *Blue*, 674 So. 2d at 1201). The evidence is clear. Isaac Johnson was murdered during the commission of a burglary of Isaac and Cora Johnson's home.
>
> Furthermore, since there was no evidentiary basis in the record for the lesser instruction of trespass, the trial court did not err in denying that instruction. Also, "the accused is not entitled to the lesser offense instruction where the evidence that proves the guilt of the lesser offense necessarily proves his guilt

of the principal charge." *Doss*, 709 So. 2d at 377. Therefore this issue is without merit.

*Hodges*, 912 So.2d at 783-84. Hodges is barred by res judicata from raising this issue.

## XIV. INVALID AGGRAVATOR AVOIDING ARREST.

¶51. Hodges next argues that the trial court erred in instructing the jury that it could consider as an aggravating factor that Hodges killed Isaac Johnson "for the purpose of avoiding a lawful arrest." Hodges specifically states that the State was incorrect in arguing that Hodges took the telephone off the hook at the Johnson house to keep Johnson from calling 911 after Hodges had shot him. As the State points out, this issue was raised by Hodges on direct appeal. This Court stated the following on this matter:

> Hodges burglarized the home with the intent to commit an assault. Cora testified that Hodges informed her that the reason he went to her house that night was to kill her and her mother if she had been there. Before arriving at Cora's house, Hodges went home and changed into black clothes, black gloves and a beige ski mask. Hodges did not park in the driveway to the house but parked two houses down. The jury could have easily concluded that Hodges disguised himself in order to conceal his identity and when Isaac still recognized him, Hodges shot him in order to avoid apprehension and eventual arrest. Since efforts to avoid arrest after the murder may also be considered, there is ample evidence of Hodges's continued attempts to avoid arrest. After shooting Isaac, Hodges took the phone off the hook. The jury could have concluded that this was done in order to keep Isaac from calling 911 after he was shot. Hodges also kidnaped Cora and her baby and fled the State. On the way to Alabama, Hodges made Cora throw his ski mask out the window of the car. This Court has held that efforts to dispose of and/or conceal the evidence of the crime are sufficient to support the avoiding arrest instruction. *Wiley v. State*, 750 So. 2d 1193, 1206 (Miss. 1999). To further conceal evidence of his crime, Hodges and his sister hid the gun that was used to shoot Isaac.
>
> This Court finds ample evidence in the record from which it may be reasonably inferred that a substantial reason for the killing was to conceal the identity of the killer or killers or to 'cover their tracks' so as to avoid apprehension and eventual arrest by authorities. The "avoiding lawful arrest" aggravating circumstance was properly submitted to the jury. This issue is

31

without merit.

*Hodges*, 912 So.2d at 786.  Hodges is barred by res judicata from raising this issue.

## XV.    FAILURE TO INCLUDE JURY INSTRUCTIONS IN RECORD.

¶52.    Hodges next argues that the trial court erred in failing to include the reading of the instructions to the jury in the appeal record.  As the State points out, this issue was raised by Hodges on direct appeal.  This Court stated the following on this matter:

> Hodges does not claim any error from the proceedings which are missing from the record. Even though there was no transcription of the instructions read to the jury, copies of all the instructions which were read to the jury are included in the court's papers. Furthermore, the parties and the court conducted thorough and detailed, on the record hearings concerning the jury instructions. The record also indicates that the jury instructions were read to the jury by the Judge. Since the instructions were included in the court's papers Hodges was not denied a fair review of trial on appeal. This was sufficient to analyze all of the issues and properly review the case and since Hodges does not raise any error from this portion of the proceedings, this issue lacks merit.

*Hodges*, 912 So.2d at 788.  Hodges is barred by res judicata from raising this issue.

## XVI.  AGGREGATE ERROR.

¶53.    There was no aggregate error in this case.

## CONCLUSION

¶54.    Quintez Hodges's Petition for Post-Conviction Relief is denied.

¶55.    **PETITION FOR POST-CONVICTION RELIEF DENIED.**

**WALLER AND COBB, P.JJ., CARLSON AND RANDOLPH, JJ., CONCUR. GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ, EASLEY AND DICKINSON, JJ., NOT PARTICIPATING.**

32